UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re Nuverra Environmental Solutions Securities Litigation | Lead Case No. 2:13-cv-01800-JWS |
| This Document Relates to:<br><br>All Actions. | ORDER AND OPINION<br><br>[Re: Motions at Dockets 69, 72, 76] |

## I.  MOTIONS PRESENTED

At docket 68 plaintiffs Jewyl A. Stevens, *et al*. (collectively, "plaintiffs") filed an Amended Consolidated Class Action Complaint ("AC").  The three motions before the court relate to this pleading.  At docket 69 defendants Nuverra Environmental Solutions, Inc. ("Nuverra"), W. Christopher Chisholm ("Chisholm"), and Charles R. Gordon ("Gordon") (collectively, "defendants") filed a motion to strike the AC pursuant to Local Rule 7.2(m)(1).  At docket 72 defendants also filed a motion to dismiss the AC pursuant to Rule 12(b)(6).  Plaintiffs oppose defendants' motion to strike at docket 70 and defendants' motion to dismiss at docket 74.  Defendants reply in support of their motion to strike at docket 71 and in support of their motion to dismiss at docket 75.  At docket 76 plaintiffs move pursuant to Local Rule 7.2(m)(1) to strike defendants' reply in support of their motion to dismiss or, alternatively, for leave to file a sur-reply.  Defendants

oppose this motion at docket 78.  Oral argument was requested but would not assist the court.

## II.  BACKGROUND

According to the AC Nuverra "is an environmental solutions company that provides delivery, collection, treatment, recycling, and disposal of water, wastewater, waste fluids, hydrocarbons, and restricted solids" to exploration and production ("E&P") companies engaging in shale oil and gas hydraulic fracturing drilling (also known as "fracking").[1]  Chisholm has served as Nuverra's Chief Financial Officer ("CFO"), Executive Vice President, Chief Accounting Officer, and Interim CFO.[2]  Gordon was Nuverra's President and Chief Operating Officer ("COO").[3]

Plaintiffs allege that Nuverra entered into an unprofitable "albatross contract" in "the February/March 2012 timeframe"[4] under which it agreed to provide its services at a "discount of 30% or more"[5] to E&P driller EOG Resources, Inc. ("EOG") at the Eagle Ford basin in Texas.[6]  Nuverra had hoped to "build a book of south Texas E&P customers" by offering below-market rates to customers.[7]  This is exactly what happened; the AC states that Nuverra "grew its operations rather quickly by way of" such below-market deals.[8]  But this growth came at the expense of profits.  The EOG contract in particular caused Nuverra's Eagle Ford business to "hemorrhag[e] hundreds

---

[1] Doc. 68 at 2 ¶ 2; *id*. at 8 ¶ 27.

[2] *Id*. at 8 ¶ 28.

[3] *Id*. at 8 ¶ 29.

[4] *Id*. at 3 ¶ 7.

[5] *Id*. at 20 ¶ 66.

[6] *Id*. at 3 ¶ 8.

[7] *Id*. at 20 ¶ 66.

[8] *Id*. at 20-21 ¶ 66.

of thousands of dollars each month because its operations could not bear the weight of EOG's sweetheart deal."[9]  The AC alleges that Nuverra misled the investing public by making positive statements about the company while the EOG deal was causing it to lose substantial sums of money at the Eagle Ford site.  Plaintiffs allege that these false statements and misleading omissions artificially inflated the price of Nuverra's publicly traded securities in violation of federal law.

At docket 61 the court dismissed plaintiffs' original complaint without prejudice pursuant to Rule 12(b)(6) for failure to state a claim.  Plaintiffs thereafter moved for leave to amend.[10]  The motion was granted in part and denied it in part at docket 67.  The court rejected plaintiffs' proposed claims related to the EOG deal against all defendants except for Chisholm and Gordon, holding that plaintiffs had failed to sufficiently allege scienter.[11]

### III. STANDARD OF REVIEW

Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims.  In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[12]  To be assumed true, the allegations, "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."[13]  Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient

---

[9]*Id*. at 4 ¶ 10.

[10]Doc. 62.

[11]Doc. 67 at 9.

[12]*Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[13]*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

<200b>

facts alleged under a cognizable legal theory."[14]  "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[15]

To avoid dismissal, a plaintiff must plead facts sufficient to "'state a claim to relief that is plausible on its face.'"[16]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[17]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[18]  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[19]  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[20]

Local Rule 7.2 "governs the filing of motions to strike, and provides that 'a motion to strike may be filed only if it is authorized by statute or rule . . . or if it seeks to strike any part of a filing or submission on the ground that it is prohibited (or not authorized)

---

[14]*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[15]*Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[16]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[17]*Id.*

[18]*Id.* (citing *Twombly*, 550 U.S. at 556).

[19]*Id.* (quoting *Twombly*, 550 U.S. at 557).

[20]*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see also Starr*, 652 F.3d at 1216.

by a statute, rule, or court order."[21]  "In the District Court of Arizona, motions to strike are not favored, and are consistently denied when contrary to LRCiv 7.2(m)(1)."[22]

### IV.  DISCUSSION

The AC includes two counts.  Count I alleges violations of Section 10(b) of the Securities Exchange Act of 1934 ("the Act") and SEC Rule 10b-5; Count II alleges violations of Section 20(a) of the Act.  Defendants contend that Nuverra should be stricken as a party from the AC because it was named as a defendant in violation of the court's order at docket 67 and, in any event, the AC fails to state a claim upon which relief can be granted.

**A.    Count I Fails to State a Claim**

Section 10(b) of the Act "forbids (1) the 'use or employ[ment] . . . of any . . . deceptive device,' (2) 'in connection with the purchase or sale of any security,' and (3) 'in contravention of' Securities and Exchange Commission 'rules and regulations.'"[23] SEC Rule 10b-5, promulgated under the authority of Section 10(b), specifically forbids, among other things, making untrue statements of material facts or omitting material facts "necessary in order to make the statements made . . . not misleading."[24]  In order to state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege the following five elements: (1) a material misrepresentation (or omission); (2) scienter; (3) "a connection with the purchase or sale of a security;" (4) transaction and loss causation;

---

[21]*Pure Wafer, Inc. v. City of Prescott*, No. CV-13-08236-PCT-JAT, 2014 WL 3797850, at *1 (D. Ariz. July 29, 2014) (citing LRCiv 7.2(m)(1)).

[22]*Kaufman v. Jesser*, No. CV-12-459-PHX-LOA, 2012 WL 4478807, at *1 (D. Ariz. Sept. 28, 2012) (citations omitted).

[23]*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005) (quoting 15 U.S.C. § 78j(b)).

[24]17 C.F.R. § 240.10b–5(b).

and (5) economic loss.[25] Defendants' motion to dismiss challenges the first two elements,[26] which must be pled with particularity.[27]

Federal Rule of Civil Procedure 9(b) states that all allegations of fraud or mistake must "state with particularity the circumstances constituting fraud or mistake." Further, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which Congress enacted "[a]s a check against abusive litigation by private parties,"[28] contains pleading requirements that are more exacting than Rule 9's.[29] They require plaintiffs to state with particularity not only the allegedly misleading statements and omissions, but also scienter.[30] With regard to misleading statements, the PSLRA requires the plaintiff's complaint to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading."[31] With regard to scienter, the PSLRA requires the plaintiff to state "facts giving rise to a strong inference that the defendant acted with the required state of mind."[32] The Ninth Circuit has combined the PSLRA's dual pleading requirements into a single inquiry whereby courts determine whether the particular facts in the complaint, taken as a whole, raise a strong inference that the defendants intentionally or with deliberate recklessness made false or misleading statements to investors.[33]

---

[25] *Broudo*, 544 U.S. at 341–42 (citations omitted); *In re Daou Sys., Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005).

[26] Doc. 72 at 2.

[27] *In re Daou Sys., Inc.*, 411 at 1014.

[28] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

[29] *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

[30] 15 U.S.C. § 78u–4(b)(1), (2). *See also Tellabs*, 551 U.S. at 313.

[31] 15 U.S.C. § 78u–4(b)(1)(B).

[32] *Id.* § 78u–4(b)(2)(A).

[33] *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001).

Turning to the facts alleged in plaintiffs' complaint, Count I of the AC contains boilerplate conclusions that defendants made unspecified misleading statements and/or omitted material facts "as set forth more particularly herein."[34] Section V of the complaint is captioned "Defendants' False and Misleading Statements," and contains 17 statements sorted into the following seven themes: statements that (1) misled the market regarding Eagle Ford's revenue growth; (2) hid pricing pressure; (3) touted Nuverra's redeployment of resources to Eagle Ford; (4) touted growth in Eagle Ford's truck fleet; (5) touted growth in Eagle Ford's labor force; (6) touted Eagle Ford's expansion with additional disposal wells; and (7) misled the market concerning growth in Nuverra's broader shale solutions business.[35] These statements were made by Gordon at three separate investor conference calls on March 8, August 6, and November 9, 2012;[36] by "defendants" in Nuverra's 2011 annual report filed with the SEC on March 8, 2012; and by "defendants" in Nuverra's quarterly reports filed with the SEC on May 3 and August 6, 2012.[37] Plaintiffs also allege that Chisholm falsely certified that these SEC reports did not omit material facts.[38]

**1.)   Nuverra's SEC filings**

    **a.   Nuverra's March 8 Form 10-K**

The Form 10-K that Nuverra filed with the SEC on March 8, 2012, contains the following allegedly-actionable statements that plaintiffs attribute to "defendants":

---

[34] Doc. 68 at 64 ¶ 180.

[35] *Id.* at 26-39 ¶¶ 85-118.

[36] *Id.* at 27, 29, 30, 34, 35, and 37.

[37] *Id.* at 31, 32, 37, and 38.

[38] *Id.* at 40-41 ¶¶ 119-22.

1. Nuverra had "been actively transferring [its] operating assets (trucks and frac tanks) to oil- and liquids-rich basins such as the Eagle Ford Shale";[39]
2. Nuverra was "currently in the process of acquiring or permitting additional disposal wells and capacity in the Eagle Ford";[40] and
3. defendants "boasted of a total fleet of 600 trucks and 1,100 frac tanks, as well as 25 disposal wells in the Haynesville and Eagle Ford shale areas."[41]

### b.   Nuverra's May 3 Form 10-Q

The Form 10-Q that Nuverra filed with the SEC on May 3, 2012, contains the following allegedly-actionable statements that plaintiffs attribute to "defendants":

1. Nuverra had "been actively transferring certain operating assets to oil- and liquids-rich basins where drilling activity is more robust.";[42] and
2. defendants "boasted of a total fleet of more than 600 trucks and approximately 1,100 frac tanks, as well as 26 disposal wells."[43]

### c.   Nuverra's August 6 Form 10-Q

The Form 10-Q that Nuverra filed with the SEC on August 6, 2012, contains the following allegedly-actionable statements that plaintiffs attribute to "defendants":

1. Nuverra had "been actively transferring certain operating assets to oil- and liquids-rich basins where drilling activity is more robust";[44] and

---

[39] *Id*. at 31.

[40] *Id*. at 37.

[41] *Id*. at 38.

[42] *Id*. at 31-32.

[43] *Id*. at 38.

[44] *Id*. at 31-32.

2. "Fifty percent growth in Shale Solutions revenues was attributable in part to 'organic growth from investments and asset redeployments primarily in the Eagle Ford and Marcellus shale areas.'"[45]

**2.) Gordon's Statements**

**a. Gordon's statements during the March 8 investor conference call**

On March 8, 2012 Gordon made the following two statements during an investor conference call that plaintiffs allege are actionable:

1. Nuverra was "operating about 75 trucks in the Eagle Ford right now, and [Nuverra expected] to increase that to 100 in the near term;"[46] and

2. Nuverra had five disposal wells and "two permits" in the Eagle Ford area, one of which was approved and the other was expected to be approved "over the next 10 days."[47]

**b. Gordon's statements during the August 6 investor conference call**

On August 6, 2012, Gordon made the following statements during an investor conference call that plaintiffs allege are actionable:

1. Nuverra "had nice growth in the Eagle Ford. It wasn't quite what we projected. The challenges in Eagle Ford are building our organization fast enough to keep up with market demands and provide a quality product. So, it was a combination of very nice growth in the Eagle Ford but not quite where we projected . . . .";[48]

---

[45]*Id.* at 32.

[46]*Id.* at 34.

[47]*Id.* at 37.

[48]*Id.* at 27.

2. Nuverra was "in the process of bidding several significant jobs in the Eagle Ford right now. So we see a nice pipeline of opportunities. All of these opportunities are with major companies";[49]

3. Nuverra "didn't see a lot of pricing pressure in the . . . Eagle Ford . . . quarter over quarter. The challenge that we had was that some of our volume moved out from the second quarter into the third quarter . . . .";[50]

4. Nuverra was "in the process of building out our platform in both the Marcellus and the Eagle Ford. I think if you look at both those shale plays in Q2 of last year, we had almost no revenue in either place. What will happen is, our businesses gain a little bit of maturity—and we're still in the process of having that happen—the organizations become much more stable";[51]

5. Nuverra had "significant businesses now in the Marcellus and in the Eagle Ford. And we don't expect to have the recurring startup costs as we go forward, although the market is very dynamic and we certainly could be upset. But the actual reason is just if you look at the growth in both of those areas, it's phenomenal. And we finally, I think, are getting to the point where we have some organizational stability in both plays":[52] and

6. Most of Nuverra's "infrastructure challenges in the" Eagle Ford "have been around hiring drivers . . . bringing our driver corps up to speed, from a training, safety and productivity perspective."[53]

---

[49]*Id.*

[50]*Id.* at 29.

[51]*Id.* at 30.

[52]*Id.*

[53]*Id.* at 35.

### c. Gordon's statements during the November 9 investor conference call

On November 9, 2012, Gordon made the following statements during an investor conference call that plaintiffs allege are actionable:

1. Gordon "boasted of 'a solid quarter in the Eagle Ford'";[54] and

2. Nuverra "continued to add drivers. We have 26% more drivers at the end of the quarter than we had at the beginning of the quarter. And we ramped up the driver population to support one of our big integrated customers that asked us to increase our presence on their site by about 60%. We're just starting that ramp-up now. We really didn't see the benefit of the ramp-up until November. But we started adding drivers throughout the quarter."[55]

### 3.) Plaintiffs do not adequately plead falsity

The PSLRA imposes "exacting requirements for pleading falsity."[56] As noted above, the PSLRA requires a plaintiff's complaint to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading."[57] Not just any reason will do. The Ninth Circuit has consistently held that pleading conclusory reasons for why a statement was misleading is insufficient.[58]

---

[54]*Id*. at 27.

[55]*Id*. at 35.

[56]*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008).

[57]15 U.S.C. § 78u–4(b)(1)(B).

[58]*See Metzler*, 540 F.3d at 1070 ("[T]his Circuit has consistently held that the PSLRA's falsity requirement is not satisfied by conclusory allegations that a company's class period statements regarding its financial well-being are per se false based on the plaintiff's allegations of fraud generally.") (citing *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1086 (9th Cir. 2002); *Ronconi v. Larkin*, 253 F.3d 423, 429-32 (9th Cir. 2001); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 984-85 (9th Cir. 1999)).

*Metzler Investment GMBH v. Corinthian Colleges, Inc.*,[59] is on point and instructive. The plaintiff there alleged that the defendant's "fraudulent practices generally along with its failure to make earlier disclosures of regulatory investigations" rendered false "virtually every statement made by [the defendant] during the Class Period related to the company's financial health or performance."[60] According to the plaintiff, those positive statements created the false impression that the company was legitimate and that it complied with its regulatory requirements.[61] For example, the complaint stated that the company's financial statements were false because they created the false impression that the defendant was outperforming expectations and increasing revenue "through legitimate business means."[62]

The Ninth Circuit held that the plaintiff's explanations for why the statements were misleading were "decidedly vague," conclusory, and therefore insufficient under the PSLRA.[63] With regard to the regulatory investigations, the plaintiff failed to cogently explain how the non-disclosure of those investigations rendered false or misleading any of the defendant's statements regarding its financial health.[64] Without alleging "some affirmative statement or omission by [the defendant] that suggested it was *not* under any regulatory scrutiny," the court held, the plaintiff failed to provide the requisite "clear[] explication" of why any statement was false or misleading.[65]

---

[59] 540 F.3d at 1049.

[60] *Id*. at 1070

[61] *Id*.

[62] *Id*. at 1071.

[63] *Id*. at 1070.

[64] *Id*. at 1071.

[65] *Id*. (emphasis in original).

Plaintiffs' allegations here suffer the same defects. Attached as an appendix to plaintiffs' opposition is a chart that lists each allegedly actionable statement and matches that statement with a reason or reasons why it was false and misleading.[66] Plaintiffs do not cogently connect these reasons with the non-disclosed EOG deal.

Plaintiffs first contend that defendants' statements about revenue growth at Eagle Ford were misleading because defendants did not disclose that such growth was accompanied by high costs.[67] But defendants' statements—we "had nice growth;"[68] "we see a nice pipeline of opportunities;"[69] we had "a solid quarter;"[70] "[w]e didn't see a lot of pricing pressure;"[71] "the organizations [will] become much more stable;"[72] "we have significant business now;"[73] and we are "getting to the point where we have some organizational stability"[74]—do not suggest that Nuverra's costs at Eagle Ford were not high.

The remainder of defendants' statements that plaintiffs contend are actionable generally pertain to Nuverra's resources. Plaintiffs allege that these statements were misleading because defendants did not disclose that the deployment of resources in Eagle Ford was costing Nuverra substantially more than it was bringing in. But

---

[66]Doc. 74-1.

[67]*Id*. at 2-4.

[68]Doc. 68 at 27 ¶ 86.

[69]*Id*.

[70]*Id*.

[71]*Id*.

[72]*Id*. at 30 ¶ 92.

[73]*Id*.

[74]*Id*.

-13-

defendants' statements—including "drilling activity is more robust" at Eagle Ford;[75] we "are operating about 75 trucks in the Eagle Ford;"[76] "[w]e have 26% more drivers"[77]—suggest nothing about the costs associated with Nuverra's activities.

In sum: plaintiffs do not plead a connection between any statement and a cogent reason why that statement was false or misleading. Because the PSLRA "requires a clearer explication of why a statement is false,"[78] plaintiffs' claims fail as a matter of law.

### B.   Count II Fails to State a Claim

As this court previously ruled, because plaintiffs have not stated a claim under Section 10(b) or Rule 10b-5, their Section 20(a) claim necessarily fails.[79]

### C.   The Motions to Strike Are Denied

At docket 69 defendants move to strike Nuverra from the AC as a party. Because this order dismisses the AC in its entirety, this motion is denied as moot. Finally, at docket 76 plaintiffs move to strike certain arguments raised for the first time in defendants' reply brief or, alternatively, for leave to file a sur-reply that addresses these new arguments. Because the court's decision does not consider any of defendants' arguments that plaintiffs contend were raised for the first time in reply, this motion is also denied as moot.

---

[75]*Id.* at 31 ¶ 97.

[76]*Id.* at 34 ¶ 102.

[77]*Id.* at 35 ¶ 106.

[78]*Metzler*, 540 F.3d at 1071.

[79]Doc. 61 at 12 (citing *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 n.15 (9th Cir. 2002)).

## V.  CONCLUSION

Based on the preceding discussion, defendants' motion to dismiss at docket 72 is **GRANTED WITH PREJUDICE**.  Defendants' motion to strike at docket 69 and plaintiffs' motion to strike at docket 76 are **DENIED**.

DATED this 23rd day of June, 2015.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE